1  ROSNER, BARRY & BABBITT, LLP
   Hallen D. Rosner, SBN: 109740
2  Jeffrey L. Le Pere, SBN: 201787
   10085 Carroll Canyon Road, Suite 100
3  San Diego, CA 92131
   Telephone:  (858) 348-1005
4  Facsimile:  (858) 348-1150
   *hal@rbblawgroup.com*
5  *jeff@rbblawgroup.com*

6  Attorneys for Plaintiffs

7

8

9              UNITED STATES DISTRICT COURT

10            NORTHERN DISTRICT OF CALIFORNIA

11

12  KYLE DEROOS, an individual, and          Case No.
    ROSALINDA SÁNCHEZ, an
13  individual;                              **COMPLAINT FOR:**

14            Plaintiffs,                     1.  **VIOLATION OF THE SONG-
                                                 BEVERLEY CONSUMER
15            v.                                 WARRANTY ACT;**
                                             2.  **VIOLATION OF
16  FORD MOTOR COMPANY, a                        MAGNUSON MOSS
    Delaware corporation, SJK, INC. dba        WARRANTY ACT;**
17  FREMONT FORD, a California               3.  **VIOLATION OF BUSINESS
    corporation, and DOES 1-30, inclusive       & PROFESSIONS CODE §
18                                               17200; AND**

19            Defendants.                     **[JURY TRIAL REQUESTED]**

20

21

22       COME NOW Plaintiff Kyle Deroos, an individual, by and through his attorneys,

23  ROSNER, BARRY & BABBITT, LLP, and hereby allege on information and belief,

24  formed after an inquiry reasonable under the circumstances, as follows:

25  ///

26  ///

27  ///

28  ///

                              1

1

## JURISDICTION AND VENUE

2     1.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. section
3  1331 because the action alleges claims pursuant to 15 U.S.C. section 2310, the
4  Magnuson Moss Warranty Act.  Plaintiff is a natural person with a claim that exceeds
5  the amount in controversy of $50,000, pursuant to 15 U.S.C. section 2310(d)(3)(B).
6  This court also has diversity jurisdiction, pursuant to 28 USC § 1332.

7     2.     This Court has supplemental jurisdiction over the California state law
8  claims, pursuant to 28 U.S.C. section 1367.  Venue is appropriate in this judicial district
9  because the Defendants are individuals, associations, or corporations that are either
10  authorized to conduct or, in fact, do conduct substantial business in the State of
11  California, County of Sacramento.

12

## GENERAL ALLEGATIONS

13     3.     Plaintiff is, and at all times herein mentioned were, an individual residing
14  in the City of Oakland, County of Alameda, State of California.

15     4.     Defendant FORD MOTOR COMPANY (hereinafter "FORD") is, and at
16  all times herein mentioned was, a Delaware corporation registered to do business in
17  California ("FORD" or the "Manufacturer"), and doing business through the
18  Dealership SJK Inc dba Fremont Ford, located in City of Newark, County of Alameda,
19  State of California.

20     5.     Defendant, SJK Inc dba Fremont Ford (hereinafter "FREMONT") is
21  licenced by the California Department of Motor Vehicles to sell Ford vehicles.  This
22  includes the subject 2011 Ford Fiesta, VIN 3FADP4EJ3BM132844 (hereinafter
23  "SUBJECT VEHICLE").   The sale occurred on or about September 16, 2012 at
24  FREMONT.

25     6.     Each Defendant was the principal, agent (actual or ostensible), co-
26  conspirator, employee and/or the alter ego of each other Defendant and in acting as
27  such principal or within the course and scope of such employment, agency, or

28  ///

1  conspiracy, took some part in the acts and omissions hereinafter set forth by reason of
2  which each Defendant is liable to Plaintiffs for the relief prayed for herein.

3

4                              **SUMMARY OF ALLEGATIONS**

5      7.    On or around September 16, 2012, Plaintiffs went to FREMONT looking
6  to purchase a vehicle. Once at FREMONT, sales representatives, whose names are not
7  currently recalled, offered Plaintiffs SUBJECT VEHICLE.

8      8.    In response to plaintiff's inquiries about the vehicle, FREMONT
9  represented that the Ford Fiesta was fun to drive with good fuel economy, safe and
10 reliable, and had smooth ride because it was equipped with an automatic transmission.

11     9.    Dealership personnel also touted Ford's warranty as a reason to purchase
12 the vehicle. The warranty Ford provided was a three year 36,000 miles bumper to
13 bumper warranty and five (5) year/60,000 miles power train warranty.    These
14 warranties from FORD are an "express warranty," per Civil Code §1793.2. Moreover,
15 FORD provided an express warranty to include any defect in design. See, page 9 of
16 Ford's Warranty Manual; See also, *Daniel v. Ford Motor Co.,* 806 F.3d 1217, 1225
17 (2015).

18     10.   FREMONT also provide Plaintiffs with an express and implied warranty.

19     11.   FREMONT advertised SUBJECT VEHICLE as a Ford Certified Pre-
20 owned Vehicle ("FCPOV").

21     12.   In order to be advertised and sold as a FCPOV, the vehicle was be
22 inspected and pass a 172 point inspection.

23     13.   FORD maintains control of the FCPOV and approves every vehicle that
24 any dealership, including FREMONT, intends to advertise and sell as a FCPOV.

25     14.   FORD also directly advertises all vehicles, including SUBJECT
26 VEHICLE, through its website: http://www.ford.com/certified-used/.

27 ///

28 ///

                                        3
                                    Complaint

15.     Plaintiff is informed and believes that this website is not the exclusive means that FORD advertised SUBJECT VEHCILE, as being "certified.   As such FORD makes direct representations to consumers, including but not limited to plaintiff.

16.     Having passed the purported 172 point inspection, plaintiff is informed and believes that SUBJECT VEHICLE would be of a higher quality than a comparable vehicle that had not passed the purported 172 point inspection.

17.     FORD advertises that vehicles sold as a FCPOV would have been inspected by a Ford factory trained technician.

18.     Plaintiff is informed and believes that had FORD properly educated and trained personnel at FREMONT then SUBJECT VEHICLE would not have passed the purported 172 point inspection.

19.     Plaintiff relied upon the representations of FREMONT personnel, whose names are not currently recalled, and the respective warranties provided by FORD and FREMONT and proceeded to purchase the SUBJECT VEHICLE.

20.     Unbeknownst to Plaintiff, the 2011 Ford Fiesta was not equipped with an automatic transmission, but with a transmission known as a Dual Power Shift 6 speed transmission (DPS6).

21.     Plaintiff is informed and believe that FORD has failed to properly educate and train sales personnel as to the true and actual characteristics of the DPS6.  Had the true and actual characteristics of the DPS6 had been known, Plaintiffs would have never purchased any vehicle equipped with the DPS6.

22.     Plaintiffs are informed and believes that discovery will reveal that the sales personnel at the dealership that sold the vehicle to Plaintiff were not adequately and properly trained.

23.     On or about July 25, 2011, Ford initiated its training of dealerships, as reference in EFC00562DC Powershift 6-Speed Automatic Transmission on Fiesta and Focus, a true and correct copy is attached herewith as Exhibit A.

///

4

Complaint

1      24.    From Exhibit A, plaintiff is informed and believes that FORD attempted
2  to utilize the following sources to educate and train personnel at its dealerships in
3  California, including FREMONT:

4                a.  https://web.esourcebook.dealerconnection.com/sellingu/quicktip20_
5                    2010/index.html

6                b.  https://web.esourcebook.dealerconnection.com/sma/powershift.pdf
7                c.  Additional training videos

8      25.    FORD had an ongoing duty to update the training it provided various sales
9  and service personnel at its dealerships in California, including FREMONT.

10      26.    FORD's ongoing and updated training of its dealership personnel is
11  necessary because dealerships in California, including FREMONT, had a duty to
12  provide accurate information to consumers, including plaintiff.

13      27.    Had FORD and FREMONT provided plaintiff with accurate information
14  about the characteristics and warranty provided on SUBJECT VEHICLE, plaintiff
15  would not have purchased SUBJECT VEHICLE.

16      28.    From the beginning of his ownership, Plaintiff experienced problems with
17  the shifting of SUBJECT VEHICLE.  This included hesitating on acceleration, and
18  otherwise feeling jerky. At first, dealership personnel, informed Plaintiff that this was
19  "normal" or that the vehicle was operating per Ford's design.

20      29.    Nevertheless, Ford's authorized repair facility, including Albany Ford,
21  subsequently performed repairs.  This included repairs specified by Technical Service
22  Bulletins ("TSB")for defects, including hesitation upon acceleration, vibration and
23  jerking upon when accelerating

24      30.    Plaintiff is informed and believes that a manufacturer, such as FORD,
25  issues a TSB following several occurrences of an unanticipated problem with a vehicle
26  or component part.  A TSB will provide technicians with recommended procedures to
27  repair vehicles.  A well-managed TSB process can save technicians troubleshooting
28  time; provide organized, itemized repair procedures; and standardize the repair process

1    31.    For this reason, the existence of TSBs – especially for the same or similar
2   issues – is evidence that FORD knew or should have known of systemic problems with
3   the DPS6.

4    32.    Plaintiffs are informed and believes that despite providing FORD and
5   HERTZ with a reasonable opportunity to conform the vehicle to it warranty, FORD
6   and HERTZ simply cannot do so.

7    33.    This is evidenced by the fact that FORD has published a series of
8   bulletins, service actions or other technical documents related to attempting to correct
9   or repair defects or nonconformities with the DPS6 Transmission, such as the
10  following:

11          • Field Service Actions:   FSA 11B31; FSA 11T02; FSA 12B37;
12            FSA14M01; FSA14M02; and FSA15B22.
13          • Special Service Messages:  SSM 44852; SSM 44828; SSM 44785;
14            SSM 44707; SSM 44161; SSM 12053; and SSM 22550.
15          • Technical Service Bulletins:  TSB 14-0047; TSB 14-0047A-E; TSB
16            14-0131; TSB 14-0197; TSB 15-0083; TSB 15-0043; TSB 15-0017;
17            TSB 14-0066; TSB 12-4-6; TSB 11-12-13; TSB 13-9-4; TSB 15-0043;
18            TSB 15-0090; TSB 15-0120; TSB 15-0121; TSB 13-4-5; and TSB 13-
19            4-5c.

20   34.    Plaintiff is informed and believe that despite these efforts, FORD has not
21  and cannot conform vehicles equipped with the DPS6 Transmission, such as the one at
22  issue, to FORD's warranty.  For this reason, the warranties FORD and the Dealership
23  provided Plaintiffs and other consumers are illusory and deceptive.

24   35.    Plaintiff is informed and believe that, pursuant to the federal TREAD Act,
25  49 U.S.C. 30101 *et seq*., FORD has prepared and filed a report(s) with the National
26  Highway Traffic and Safety Administration (NHTSA), and/or other governmental
27  agencies, related to claims made as to the DPS6.

28

Complaint

36.     Plaintiff is informed and believe that the TREAD Act requires manufacturers, including FORD, to provide aggregate information about warranty claims it has paid, property damage claims (regardless of whether paid or denied), customer complaints (oral and written), and field reports.

37.     In addition to problems with the shifting and the DPS6, Plaintiffs have experienced other defects, including without limitation, the following:

- Restraint control module
- Check engine light illuminating
- Vacuum canister and leak detection hose
- Transmission malfunction light illuminating, and
- Catalytic converter

38.     Plaintiff has now lost confidence in the vehicle.

39.     Plaintiff has demanded that FORD and/or FREMONT comply with its statutory obligations. To date, FORD and/or FREMONT have willfully refused.

## FIRST CAUSE OF ACTION

### Violation of the Song-Beverly Consumer Warranty Act

### (Against All Defendants)

40.     Plaintiffs incorporate herein each and every allegation set forth in Paragraphs 1 through 39 of this Complaint, as though fully set forth herein.

41.     Pursuant to the Song-Beverly Consumer Warranty Act (hereinafter the "Song-Beverly Act") Civil Code §1790, *et seq.*, the Vehicle constitutes "consumer goods" purchased primarily for family or household purposes, and Plaintiff has used the Vehicle primarily for those purposes.

42.     Plaintiff is a "buyer" of consumer goods under the Song-Beverly Act.

43.     Defendants FORD and FREMONT are a "seller" under the Song-Beverly Act.

///

44.  The foregoing defects and nonconformity to warranty manifested themselves within the applicable warranties periods. The nonconformities substantially impair the use, value, and/or safety of the Vehicle and were not repaired during the warranty. The Vehicle continues to have mechanical problems, which FORD failed and/or refused to address.

45.  FORD failed and/or refused to conform the Vehicle to the applicable Express Warranty, after a reasonable number of attempts.

46.  Notwithstanding Plaintiffs' entitlement, FORD has failed to refund the price of the Vehicle or replace the Vehicle as required by the Song-Beverly Act.

47.  The Dealership's failure to remedy the defects on the Vehicle as alleged above, or to issue a refund or replacement, constitutes a breach of the Dealership's obligations under the Song-Beverly Act, and the Express Warranty.

48.  Furthermore, the Vehicle would not pass without objection in the trade and was not fit for its ordinary purpose at time of sale.

49.  The implied warranty of merchantability has been breached, in that, among other matters: (1) upon information and belief, the Vehicle would not pass without objection in the trade because it is incapable of safe operation for use on the roads or highways and was sold with serious defects, including but not limited to a faulty transmission; and (2) is unfit for the ordinary purpose for which such vehicles are intended to operate and function.

50.  The Dealership's failure to remedy the defects on the Vehicle as alleged above, or to issue a refund or replacement, constitutes a breach of the Dealership's obligations under the Song-Beverly Act, the Express Warranty, and implied warranty of merchantability.

51.  Plaintiff is entitled to, and justifiably revoke acceptance of the Vehicle under the Song-Beverly Act, and sent FORD and FREMONT a notice of revocation prior to the filing of this Complaint.

///

1  52. Further, pursuant to the Song-Beverly Act, Plaintiff is entitled to
2  reimbursement of the purchase price paid for the Vehicle, less the amount directly
3  attributable to use by Plaintiff, prior to discovery of the nonconformities.

4  53. Also, Plaintiffs are entitled to all incidental, consequential and general
5  damages resulting from the failure of FORD and FREMONT to comply with its
6  obligations under the Song-Beverly Act.

7  54. Pursuant to the Song-Beverly Act, Plaintiffs are entitled to recover as part
8  of the judgment a sum equal to the aggregate amount of costs and expenses, including
9  attorneys' fees, reasonably incurred in connection with the commencement and
10 prosecution of this action.

11 55. Plaintiffs are entitled in addition to the amounts recovered, a civil penalty
12 of up to two times the amount of actual damages, in that FORD and HERTZ have
13 willfully failed to comply with its responsibilities under the Song-Beverly Act.

14

15                    **SECOND CAUSE OF ACTION**

16              **Violation of Magnuson Moss Warranty Act**

17                     **(Against All Defendants)**

18 56. Plaintiff incorporates herein each and every allegation set forth in
19 Paragraphs 1 through 55 of this Complaint, as though fully set forth herein.

20 57. Plaintiff is a "consumer" as defined in Magnuson-Moss Warranty Act
21 (hereinafter "Mag-Moss"), 15 USC Section 2301(3)

22 58. Defendant FORD and HERTZ are a "supplier" and "warrantor" as defined
23 in Mag-Moss, 15 USC Sections 2310(4) and (5).

24 59. The Vehicle is a "consumer product" as defined in Mag-Moss, 15 USC §
25 2301(1).

26 60. FORD provided Plaintiff with a "written warranty," as defined in Mag-
27 Moss, 15 USC § 2301(6).

28 ///

9

Complaint

61.     Under California an "implied warranty of merchantability" was created in connection with sale of the Vehicle, as defined in Mag-Moss, 15 USC § 2301(7).

62.     Defendants' failure to provide Plaintiffs with the Vehicle substantially free of defects, as warranted, constitutes breach of the Express Warranty and implied warranty covering the Vehicle, and hence violation of Mag-Moss.

63.     Plaintiff has provided defendants an opportunity cure.

64.     Plaintiff has complied with all of the obligations, as agreed to and required under the RISC, except as may have otherwise been excused or prevented by the Defendant.

65.     Plaintiff is informed and believe that FORD and FREMONT are unable to conform the Vehicle to the applicable warranties, after having provided Defendant a reasonable opportunity to cure the defects.  For this reason, FORD's warranty is illusory under Magnuson Moss.

66.     As a direct and proximate result of the act and omissions of the Defendants, Plaintiff has been damaged in an amount which will be shown according to proof at the time of trial.

67.     Further, under Mag-Moss, 15 USC Section 2310(d)(2), Plaintiff is entitled to recover as part of the judgment, costs and expenses of the suit, including reasonable attorneys' fees.  Plaintiff has incurred and continues to incur legal fees and costs and expenses in connection with the commencement and prosecution of this action.

## THIRD CAUSE OF ACTION

### Violation of Business & Professions Code § 17200, *et seq*.

### (Against All Defendants)

68.     Plaintiff incorporates herein each and every allegation set forth in Paragraphs 1 through 67 of this Complaint, as though fully set forth herein.

69.     Defendant FORD committed acts of unfair competition, as defined by Business and Professions Code Section 17200, *et seq*. As set forth more fully in the

Summary of Allegations above, FORD have engaged in a course of conduct of systematically violating the consumer laws in this State prohibiting the commitment of deceptive practices, including the laws of fraud and deceit, and the various prohibitions contained in the CLRA and the Vehicle Code.

70.     Defendant FORD engaged in "unlawful," "unfair" and/or "fraudulent" business acts and/or practices by: (1) misrepresenting the marketing, advertising, description, and warranty of the Vehicle, and the DPS6 Transmission; (2) engaging in a scheme to redefine the performance ability of the DPS6 Transmission to avoid the expense and embarrassment of recalling thousands of vehicles to replace and install a different transmission that was not plagued with an intermittent jerk or shudder upon acceleration; (3) selling the Vehicle, and all other vehicles equipped with the DPS6 Transmission, knowing that no repair can be made to remedy the intermittent jerk or shudder experience upon acceleration, and failing to disclose this known defects, prior to the sale; (4) continuing to market, advertise and warrant vehicles equipped with DPS6 Transmissions, such as the one at issue, without disclosing this known defects; (5) intentionally misrepresenting the condition of the Vehicle; (6) intentionally failing to disclose the defective condition of the Vehicle; (7) failing and/or refusing to repair the Vehicle, as promised under the Warranties; (8) upon information and belief, misrepresenting the extent of repairs performed on the Vehicle; (9) failing to adequately and properly train dealership personnel in both sales and service about the design, characteristics, and warranty of vehicles equipped with a DPS6; (10) advertising and selling vehicles, including SUBJECT VEHICLE, as a FCPOV, even though a defect in design exists; and (11) providing a "deceptive warranty," per 15 U.S.C. § 2310(c)(2).

71.     The harm to Plaintiff outweighs the utility of Defendant FORD's policies and practices particularly considering the available alternatives, and that FORD's policies and practices are immoral, unscrupulous, unethical and against public policy.

///

Complaint

1   FORD's policies and practices consequently constitute an "unfair" business act or
2   practice within the meaning of Business and Professions Code Section 17200.

3       72.    FORD's deceptive policies and practices as set forth above also are likely
4   to and/or have deceived the Plaintiff. Thus, FORD has also engaged in "fraudulent"
5   business practices.

6       73.    FORD has engaged in, and continue to engage in, the same form of
7   deceptive acts and practices. FORD's unlawful, unfair and fraudulent business
8   practices present a continuing threat to the Plaintiffs and others in that they will
9   continue utilizing similar policies and practices.

10      74.    Pursuant to Business and Professions Code §17203, Plaintiffs are entitled
11  to an order enjoining FORD from engaging in acts or practices that violate Business
12  and Professions Code §17200, as well as providing for equitable monetary relief so as
13  to preclude the retention of all ill-gotten monies by FORD or so as to restore any
14  monies wrongfully obtained by the Defendant to the Plaintiff.

15      75.    Plaintiff has lost money and suffered injury in fact as a result of the
16  FORD's illegal conduct. Plaintiffs seek such equitable monetary relief, and an order
17  enjoining FORD from engaging in the acts and practices set forth in this Complaint,
18  imposing an asset freeze or constructive trust over such monies as deemed appropriate,
19  as well as compelling a corrective informational campaign to correct the
20  misperceptions in the marketplace created by such conduct. Plaintiffs further seek
21  attorneys' fees and costs pursuant to Code of Civil Procedure § 1021.5.

22      Accordingly, Plaintiff prays for judgment as follows and as permitted as to each
23  cause of action:

24          1.   For general damages according to proof;

25          2.   For incidental and consequential damages according to proof;

26          3.   For restitution and rescission of the purchase agreement;

27          4.   For punitive and statutory damages where available, only against
28               FORD;

1    5.    For the equitable and injunctive relief permitted under Civil Code

2          §1780 and Business & Professions Code §17200;

3    6.    For pre-judgment interest at the legal rate;

4    7.    For reasonable attorneys' fees and costs of suit as permitted by law

5          (including, but not limited to, Civil Code §§1780(e), 1794, Code of

6          Civil Procedure §1021.5, and , 15 USC Section 2310(d)(2); and

7    8.    For such other and further relief as deemed just and proper under

8          the circumstances.

9

10   Dated:  January 26, 2016                ROSNER, BARRY & BABBITT, LLP

11

12                                    By:  /s/ Jeffrey L. Le Pere
                                          Hallen D. Rosner
                                          Jeffrey L. Le Pere
13                                        Attorneys for Plaintiffs

---

13

Complaint

Exhibit A

July 25, 2011

**To:** All Ford And Lincoln Dealers

**Subject:** EFC00562DC PowerShift 6-speed Automatic Transmission on Fiesta and Focus

**Background**
Last year Ford launched an all new transmission, PowerShift, an advanced six-speed automatic transmission based on manual transmission technology with class-leading fuel efficiency. This communication will help explain the benefits, technology, and common characteristics of this new transmission found on the Fiesta and Focus in order to improve the customer expectations and experiences.

**PowerShift is the Best of Both Worlds**
Power Shift offers convenience, comfort and accessibility to a broader range of drivers like a conventional automatic, while delivering the mechanical efficiency – both fuel economy and responsive performance – of a manual transmission. PowerShift optimizes fuel efficiency with up to 40MPG and driving dynamic "Fun to Drive" performance.

Similar dual-clutch technologies are time tested and found in premium vehicles. Over the next five years, Ford will expand PowerShift technology to 1.5Million vehicles made.

**Conventional Transmission Technology**

- Traditional automatic transmissions have internal clutches – invisible to the driver – to enable gear changes. Working in combination with a torque converter spinning in a pool of automatic transmission fluid, a traditional automatic relies on hydraulic pressure generated by a power-sapping pump to deliver power to the wheels.
- A manual transmission has long been a fuel-efficient choice for drivers aiming to squeeze every last mile from each gallon of gasoline. This economical driving required that a motorist possess the manual dexterity to coordinate engine speed, gear selection and clutch engagement, all while steering, stopping and accelerating.



*PowerShift is an advanced automatic transmission technology*
PowerShift maintains a pair of internal clutches, but eliminates everything else. The PowerShift is really like two 3-speed manual transmissions put together, with the freedom of operating a clutch as the components are controlled electronically. Since most of the components are derived from a manual transmission, the PowerShift transmission will drive, sound, or feel like a manual transmission only the driver does not have to shift gears.

**Customer Benefits:**

- Customers will notice the traditional fun pep off the line and dynamic driving characteristics traditionally found only on a manual transmission vehicle.
- PowerShift combines the fuel efficiency of a manual transmission to achieve unsurpassed fuel-economy of up to 40MPG!
- PowerShift dry clutch saves weight, improves efficiency, increases smoothness and requires no regular maintenance (the entire unit is sealed with low-friction gear lubricant for the 150,000-mile projected life).
- Customers will receive the fuel efficiency of up to 40MPG along with familiar characteristics found on a traditional automatic-like controlled vehicle speed, as in low-speed parking maneuvers or backing out of a driveway, creeping forward in stop and go traffic or coasting down hills
- Drivers will experience no rollback when stopped on a hill – again replicating the predictable behavior of a traditional automatic. This allows the driver to smoothly and seamlessly launch the Fiesta on an incline regardless of degree.

**PowerShift Training Resources:**

- **Quick Tip** - e-mail blast sent to all Sales Consultants and Sales Managers
- https://web.esourcebook.dealerconnection.com/sellingu/quicktip20_2010/index.html
- **PowerShift Past Fact** - Posted on eSourcebook: https://web.esourcebook.dealerconnection.com/sma/powershift.pdf
- **Look for more training to come shortly – Powershift training Video**

**Service Personnel Support**
Since PowerShift Transmission is a new technology, customers might not be familiar with the normal driving characteristics of this transmission. The following communication will help assist with any customer concerns.

**Common Characteristics of the new Dual-Clutch Power Shift 6 Speed Transmission**
Common Sounds a driver may notice are:

- A customer may describe the sound as double clicking metal sounds that may be heard for each gear engagement or disengagement. This is sound of gears shifting and synchronizers (similar to a manual transmission). These noises can likely be heard while driving on very smooth surfaces during a 1-2 up shift or a 3-2-1 coast down. The sounds occur with every gear engagement, but generally cannot be heard over the background engine, road and wind noises at higher speeds. Most noticeable if the windows are down and the radio is off. These shifting sounds are part of normal operation.
- A slight gear whine while slowing or coasting, where the transmission is back-driven by the wheels may cause this noise, which is normal.
- Transmission cycling to the start position after the engine is turned off.

Some customers may experience a reverse trailer hitching feel (or a slight bumping feel) and/or a grinding noise at about 2 MPH. This reverse noise is caused by a bearing spinning in the transmission and does not affect the durability of the transmission. The trailer hitching feel may occur in lower forward gears as well – particularly if the customer is off and on the gas quickly. It may be more noticeably in a parking lot or when a customer is doing multiple on/off gas pedal maneuvers. This trailer hitching/engagement feel is a result of the dry clutches and is characteristic of manual transmissions. Conversely, automatic transmissions have a torque converter. The torque converter is a fluid coupling device which smoothes out these positive engagements feels.

**Diagnosis tips to be used during service visit**

When evaluating a customer experience regarding this transmission first compare to a like vehicle. If the sound is similar to a like transmission, make sure both the transmissions are at the same operating temperature. The sounds will change as the transmission oil gets hotter and thinner.

If the vehicle has a dead battery, or loses electrical power due to the removal of a power or ground, the Transmission Control Unit (TCU) will shift the transmission through all the gears to relearn the gear positions. This will make a series of mechanical noises, for 10-30 seconds. This is normal after a TCU power loss. The vehicle will not engage or move while this is happening.

As the vehicle is powered down, the TCU will cycle the clutches to the open position, so that it is ready for a safe re-start of the engine. This is part of normal operation.

Some PowerShift transmissions will exhibit gear whine in reverse. The level of whine has been reduced recently but still can be detected to some level. This is characteristic of many manual transmissions, and is not a defect or a situation in which a repair should be made.

**"Green Clutches"**

- Fiesta Vehicles build after Jan 12, 2011 may have clutches that are green which are not broken in.
- Green clutches can lead to a rattle noise that sounds like a catalytic convertor shield rattle. This noise is commonly heard after light pedal 1-2, 2-3 or 3-4 up-shifts. This rattle noise will improve greatly as the clutch completes the break-in.
- The Focus vehicles may experience a take-off shudder/launch judder (shaky vs. smooth), caused by this same green clutch. Customers may also notice that the first few cold shifts will have more feel. They will notice progressively better launch and smoother shifting within the first few hundred miles of mixed driving as the clutch breaks-in.

Note: The break-in process may take longer for highway driving, where the clutch is not shifting. The transmission controller will automatically learn and make adaptations during shifting events, so it is important to evaluate after allowing sufficient driving time for adaptations to occur.

This green clutch feel may reappear if the clutch touch points are reset and/or the clutch is removed and/or replaced. The condition may last longer for a clutch replacement than a reset. A reset may take up to 100 miles to get the new touch points learned to the point of not making any of the out of adjustment noise. A clutch replacement may take up to 1000 miles to reach break-in dependant on the customer style of driving.

**Questions**
Please contact your Sales or Service Zone Manager with questions.

Copyright 2012 Ford Motor Company

Site Feedback